and by one more marked for confidentiality purposes and the names basically of everybody who played in this solicitation other than free alliance and maybe I think maybe even its own subs are blocked out. Can we, are we stuck by that? I mean how can we talk for your case for example without talking about the folks from Oklahoma? Certainly your honor. I mean is that how I have to describe that particular bidder? Well your honor I had I had envisioned trying to to refer to the appendix page number where those particular companies are referenced. That's going to be confusing for us. I think we're all right there was no request to close the courtroom and let's proceed with the substance of the appeal. Okay. Good morning your honor. My name is Matthew Schoonover and on behalf of freealliance.com may it please the court. The court should determine that the agency's evaluation of free alliance's proposal was improper for either of two reasons. First contrary to the met the solicitation's requirements. Second and more fundamentally the agency disparately evaluated free alliance's proposal in violation of the FARS requirement for fair treatment of offerors. This disparate evaluation manifested itself in two ways. The agency allowed at least two offerors with perceived flaws in their accounting verification forms to proceed to phase two. When you say allowed the two to go to phase two it would have let them go to phase two on the accounting issue but not on others. It didn't go to phase two. That is correct. One was taken back for re-examination. We don't quite know whatever right? That is correct your honor. There was at least one offeror that that received go ratings under phase two or excuse me under the second criterion that the agency below had indicated there was a new GAO protest that was filed and we don't know the results of that. So that one really come probably comes off the table. You have an argument about it right? Well your honor. Friends from Oklahoma that made the main problem right? Certainly certainly but I don't believe that it comes off the table. I think the record that we have. You would prevail on your friends from Oklahoma. Yes. If we if we agree that Judge Barnett was wrong in the way in which he dealt with that problem. That's correct. That's that's I believe that is correct. The record that we have shows that that particular offeror. That particular offeror was going to be passed. I mean the government knows where all this is coming from. That particular offer was described on page 39 of the red brief. That's why I refer to the Oklahoma reverend you'll notice because of the name of the of the nation. And the argument the government here is saying that that the agency was incorrect to have given them a pass on the accounting issue. That is that is correct your honor. So that's an that's an admission that you didn't have in hand down below correct? That is correct. That is correct and another. You believe that admission undermines Judge Bronte's ruling that there was no no harm here? That's correct your honor. And another admission that we did not have below was was perhaps well was shown most recently in the government's most recent filing before the before this court in September. This summer the agency as I understand has has completed its evaluation of these. Yes that is correct and six of those offerors your honor. Six were originally deemed go with clarification under the first phase one go no go criterion. And that in our mind supports our argument that those six offerors at least. Well that we we don't know that we'd have to get into the facts behind them. We don't know that. That's that's correct. But the only reason why that subject is of record is because the government gave us a notice saying who won. That's that's correct. That's why it's on the record there was nothing. Isn't isn't your strongest case based on the concession made on page 39 39 40 of the red brief 38 39. Well certainly the the strongest case in the record yes. Well that's the record is what we have in front of us. Yes. Your argument is that because the government now admits that one party who was sent through on the accounting should not have been. Then basically if they're they and that party was sent through to phase two you're saying well then you can't stop me from going to phase two just because I also flunked accounting. More or less your honor. Yes that is correct. Yes yes. That if if the agency allowed some offerors the opportunity to slip through then it didn't allow us that that was an unequal evaluation. Okay so assuming that Judge Brankley was wrong when he said well there was no harm here the question for you is where's your prejudice. You even if you could show that you should have gone to phase two you can't you can't prevail unless you can satisfy the prejudice test. Yes your honor. And the prejudice test as I understand it is you have to show a substantial chance of winning the contract. And certainly I believe that if we that's the test that's correct not the weeks test. That's correct. It is not a but-for test. We do not have to show but-for the heirs the agency that we would have won a contract. Instead the only thing that we have to show is that we would have had a substantial chance at receiving the award. And here certainly we believe that if we were allowed the opportunity to proceed to phase two. But you knew all this. You you don't have you didn't make any record on a substantial chance of prevailing on prejudice below. Well your honor we were we were in the evaluation we were denied that. I'm talking about in front of the court of federal claims. So yeah Judge Brankley didn't reach the question of prejudice because he said there was no disparate treatment. That's that's that's what Judge Brankley said. So if we take the government's concession here and it's briefing to show that there was prejudice. Then we need to decide the next question would be about pardon me that there was disparate treatment. The next question is was there was prejudice. And we certainly believe there was your honor. The only reason. I know you believe you do but there's nothing in the record. Well and respectfully I disagree with that your honor. Just getting to phase two doesn't tell you anything about your chances of winning the contract. Your honor we had to proceed to proceed to phase two. Phase two was the best value evaluation here. So so we were prevented that opportunity. I understand that. But in order to show prejudice you would have to show that there was a substantial chance that you would have won on at phase two. Well we only had to show that we had a substantial chance at receiving the award. And if we if that's winning that's getting the contract. I agree. But there are lots and lots of other bidders and they were making um holistic choices as between who once they got to phase two right? Yes that's the phase two evaluation was the best value evaluation. And that's where offer or substantive proposals would be evaluated. How do I know that you had any chance on best value? Do I know I don't know anything about your pricing? Well your honor there's nothing in the record below. The agency did not evaluate our proposal under phase two. And so what we are saying is that if we had the opportunity to proceed to the phase two evaluation. Keep in mind that's all we're asking for here. Is the opportunity to to compete under phase two. We're not asking for a contract award. We're just saying my problem is is that and given the nature of what the government is now saying as to why you were treated differently from our friends from Oklahoma at phase one. That if you get to phase two you can't you you can't win in your protest unless you can show a substantial chance of prevailing on the contract. The Banham test not the Weeks test. And there hasn't been any assessment of that. And I wonder why perhaps a vacate and remand wouldn't be the order of what you'd be asking for. I'm sorry? A vacate and remand. I mean you you can't win unless you can show prejudice. You haven't yet had an opportunity to make that showing. That's correct. So I certainly believe that if this court were to vacate the ruling and send it back the agency could be compelled to actually re-evaluate our proposal under phase two. Again that's that's all we're asking for here. We were the agency did not evaluate our proposal or free alliance's the phase two. But the agency said you didn't provide adequate documentation that your accounting would be satisfied satisfactory as shown by a state proper statement on the letterhead of a CPA. The agency has said that your honor. That that has said that that's the basic holding against what you're appealing right? That's correct. And and we believe of course it goes without probably won't be a surprise to the court that we believe that the agency's decision was was improper. If you look at the accounting verification forms that that were provided by free alliance at appendix pages pages 41 and 42 they provide the substantive information that the agency needed to evaluate our CTA members or the adequacy of our CTA members accounting systems. But they were all has not been performed. However third party review was conducted found to be adequate. This is not what they required. Respectfully I disagree your honor and at the very top of the form it says that this and I'm paraphrasing here it says that this accounting verification form is submitted under CIO SP3 because that solicitation requires and I'm sorry I'm in my rebuttal time there's no doubt that you didn't comply with the letter of what's in the regulation isn't that right isn't your point that since others were permitted to remedy this flaw that you were prejudiced because of disparate treatment yes not that you complied yes that is well that is certainly part of it we believe that we did comply and that even if you can't comply even if it's not about that your honor but but there were other offerers who also submitted accounting verification and that's that's what I was going to suggest your honor is that we believe that we provided the substance that was required by the solicitation and and the argument about letterhead we the forms provided the CPA's name CPA firm and the contact information that's basically the information that is required for letterhead the only thing missing that might be a logo but even if the letterhead argument was determinative or or found against us judge Newman you are correct that there were other offerers that were allowed to submit verification forms that were not on letterhead that were nonetheless allowed to proceed to phase two the government says they were all eliminated on other grounds you say that they were not they proceeded some of them to phase two is that right the record suggests that they that at least one of them proceeded to phase two at appendix page 66 item 23 or excuse me appendix page 66 66 i'm sorry your honor my my notes are oh excuse me um if the court were to look at appendix page 61 um this is a company that goes so fast appendix page 61 i apologize your appendix got all these fold outs it's hard to figure out what page you're talking about 61 yes 61 uh this was a a company that is not on letterhead and and that was ultimately um that company was awarded um ultimately one of the contracts we also have didn't they remedy well they remedied isn't that correct that that company did remedy the flaw by providing the letterhead uh cpa uh certification i don't believe that's correct with that particular um offer or your honor i don't believe that that that company submitted resubmitted a new letterhead no i don't believe that's the case we do have another instance we need to know that it has to be yes or no it can't be i don't believe i mean you're making well we do remedy it there's no we do have another instance uh i mean you're you're dancing all around for your targets do you need a target besides your friend from oklahoma well i i think i think we have uh targets in there and we've certainly talked about them in our our briefing um there there are several government dealt with all those and it's briefing and said well there are other reasons because the problem was that nobody was maybe except for a couple of the potential bidders were following the total letter of the requirement a letterhead signed by a partner and so the basically what was happening was whoever was receiving is trying to assess whether whether what did you give us enough information for us to know where we could go that's correct and one of the requirements was he had to have your accounting system tested for example more or less than one of your one of your operos and admitted he never tested his system so i mean i i disagree with that characterization but the point is that the for you to be able to show that there was disparate treatment you need to show that there was somebody who either made it to phase two who flunked accounting this is assuming you flunked made it to phase two or or would have made it to phase two for flunking the counting but for another fall and and your honor i don't i don't necessarily we're looking at the the phase one evaluation as a whole and there were there were two for for purposes of this matter there were two different criteria under phase one the first compliant proposal and we have seen a litany of the other criterion is an accounting system now unfortunately there just weren't that many offerors who received either passing marks under criterion one and and no marks or or failing marks under criterion two in fact we were the only free alliance was the only offeror that received a go under criterion one and a no-go rating under criterion two there were three other offerors i should know that received a go with clarification and a a no-go uh under criterion two i would also point that oh i i realized my red light proceed oh i was also going to point out to the court when when we look at at the verification of the accounting forms to your honor's point this certainly does seem to have been all over the map with regards to the forms that some offerors provided and if the court were to look at appendix page 58 57 excuse me this is for an accounting verification form that says basically this offer or this company's accounting form is is adequate to prepare their taxes at the end of the year and that is not at all what the solicitation required but they were they were eliminated what happened where where do they show up on this list on 66 your honor that is uh item number 22 and they were go with clarification uh and go for the acceptable accounting system that accounting form was found to be adequate at least as as part of appendix page 66 now the government below has said well this there was another bid protest about this case so we can't really talk about it but the record we have before us suggests certainly that this offerors or this contractor's accounting verification is that the one that went back yes that was okay so that's the one where the government recognized there was a potential problem so it pulled they pulled them out of this chain and put them someplace else well we don't know why the government pulled them well i understand that but it's a that i mean to me your friend from oklahoma from the government's page 39 gives you the hook that you haven't had before which is the government's admission that someone was competing with you at phase one also flunked accounting but they would have been allowed to go forward but for the fact that they flunked some other test yes right yes that is correct and judge bronchi rationale was well that made a difference because they didn't make it to phase two you weren't treated differently because you didn't make it to phase two yes your honor that was judge perkins's uh analysis and again we disagree with that we think that maybe you ought to talk a little bit because that's the rationale the government's gonna yes stand on when i point out and they're gonna say yes we admit that the friends from oklahoma were just like you on the accounting issue right yes but that's no harm to you because they didn't make forward well and and we i disagree with that your honor i apologize my red light is on so i can either address it now please answer the question so i certainly agree that that had we had that same opportunity uh or if our proposal had been evaluated equally as was our friends from oklahoma as you call them then we would have proceeded on to phase two and that is the nature of of the that kept us ultimately from proceeding to phase two and i think that the with respect to judge bergenk the analysis below was too narrow in that it focused on each individual criterion to recognize the possibility of disparate treatment there's no question about that yes and he said well this is pretty troubling but but i think i have an answer here as to why i don't have to worry about it yes because none of none of you and the other people made it up to phase two well and again we disagree well i i certainly think that if free alliance were allowed the same opportunity to fix its whatever perceived deficiencies were in its proposal that some of these other offerors let me ask you what happened let's assume for purposes of argument the court agreed with you that there was disparate treatment and uh that we then need to decide whether you were prejudiced by because if you weren't you can't go forward and we decided or we sent it to have that if you can show prejudice substantial likelihood of likely winning the contract what happens if this contract has been left yes the the the cio sp3 contracts have been awarded eight or nine or ten or fifteen bidders have been awarded contracts i believe the total is 60 area that you could just be added on would someone have to be taken off do they have to i i do not believe that they would have to do so um they could simply add us on if there was if there was prejudice there there's we are not asking that anybody's award be taken away and the nature of the cio sp3 award is again this is a g-wag this is one of these government-wide acquisition vehicles under which different people come in and and make orders against so we would certainly work with the public can come to any one of you yes yeah well it basically they compete the awards among the g-wag holders they compete for orders uh the g-wag holders compete for orders that are issued by different government agencies and so certainly then at that point we could compete for those orders if this court were if the court were to find prejudice we were evaluated under best value under phase two and ultimately named an awardee we're not asking for uh anybody's award to be taken away we are asking to be added to the pool of g-wag holders in this case or at for that opportunity to be considered as part let's hear from the governor we'll save you rebuttal time thank you your honor miss sanchez good morning may it please the court can we start with uh page 39 you'll breathe our friends in oklahoma friends from oklahoma okay so so that is the friends from oklahoma was a person that like free alliance was competing to try to win this to be included in this contract right correct and they needed at phase one to satisfy the accounting test as well as the other test right correct and as i read what you're saying on page 39 is they should not have been deemed to pass the accounting test that is my understanding of the record okay so so we start off and we say the the bidder from oklahoma uh is just like free alliance and that they both failed the accounting test um yes they both failed the accounting test the friend from oklahoma also failed the second test yes so they were not allowed to go to phase two yes if they had if they had passed the second test they wouldn't go into phase two not necessarily your honor and that's well there's nothing in the record that shows they would not have gone to phase two well and that's what i would like to explain um the charts if it's true that the oklahoma bidder who flunked the accounting test could have gone up to phase two even with a flunk accounting test then free alliance who was barred from going to phase two from a flunked accounting test would have been treated differently if that had been the factual scenario then i i would agree with the court yes and if that's the case if that's the case then we would have injury shown but we would not know the answer to the prejudice question that is correct and the prejudice question was never ventilated below because judge bronkin found that there was no injury that is correct so would the correct result be if we were to decide that there was disparate treatment here with regard to the accounting issue going to phase two would the correct result be to vacate and send it back and to have a prejudice examination at the court below i i don't under that hypothetical yes but that is not the factual situation that we have here the charts that um mr schoonover directed the court to the charts at pages 62 through 67 of the appendix those are pre-decisional notes wait wait 62 to 67 yes your honor those are charts it's hard to read the pagination and the thing here 62 to 67 they are hard to read okay i've seen 66 67 what about them those are the those are excerpts of pre-decisional charts in which the evaluators were keeping track of what they found in their initial review of the documents we really do not know here what would have happened if mind belief i'm sorry if oklahoma had been found um compliant with the second purple with the second factor because they didn't get a chance the evaluators didn't get a chance well if oklahoma had been found found compliant on both accounting and the second factor they would have gone to phase two that is correct on the record that we have yes but if we look at page 87 of the appendix um that is the the write-up on um oklahoma and why and oklahoma was a cta partner for the oklahoma oklahoma is a cta partner um that applied that submitted what's the what's the problem of why you hadn't cited this in your brief why are we talking about 87 no i cited it in the brief it's at it's on page 39 your honor um on page at the bottom of page 39 and we explained there that um and we we've been very frank with the court on this i mean this record isn't perfect um there were pre-decisional findings that were not reviewed later on um when it came time for the contracting officers to write up the basis for evaluation for competition so you had to have um you had to pass both however in a lot of these i understand that you can't go to phase two unless you pass both tests yes but right and and oklahoma was deemed to have flunked compliant proposal step one yes but they were agreed to have found your pass accounting not in the final consensus the final consensus your honor um is on page 87 they didn't they didn't page 87 of the appendix that's the final consensus what's it say about accounting in 87 it doesn't say anything about accounting because in a lot of these summaries if they have one so we have to deal with the record in front of us so far as we know they were fairly compliant on accounting but you admit in your brief that they were not compliant no but the record in front of us my point is that the way that the contracting officers tackle mix up his mind right they didn't necessarily go back and review initial findings if they reached final findings on on the second factor in a lot of these summaries um right but whether or not the decision that they passed accounting preliminarily at some stage the record that we have shows that they were found acceptable on accounting that is the government in in a in a gesture of candor that i rarely see from the government has come in and said well judge brungan made a mistake no we're not saying that judge bruggen made a mistake i mean judge bruggen in his opinion got it right judge brungan said there was no disparate treatment that is correct your honor there's no disparate treatment so i how can there be no disparate treatment when free alliance is treated differently from oklahoma i got the impression during the oral argument that judge bruggen quite understood the the challenges with the administrative record in the way the write-up survey and so he knew that there was a problem and he said i don't have to worry about it because oklahoma flunked never made it to phase two correct that was the that's what the opinion says that's his rationale and my judgment is that that's an inadequate rationale because he didn't treat the he divided phase one in two parts if free alliance if someone who failed the accounting test that would have been passed forward right this free alliance would not was not passed for because it fought so it's arguing that it was mistreated free alliances deficiencies were so significant in both cta partners submissions that they were so facially non-compliant they may have been more but why but isn't oklahoma also non-compliant in your do you say it is we conceded that they're non-compliant your honor in a perfect world the contracting officer would have carried over the preliminary findings and polished up the the final findings and included every single um reason for exclusion it just wasn't done in this record um it's not the way that the contracting officers decided to approach it but i can represent to the court based on my knowledge of this record and also based on the fact that plaintiff hasn't been able to point to any offeror that didn't have a compliant accounting verification that moved to phase two none of them moved to phase two with the non-compliant accounting verifications none of them so when free alliance claims that there were some that had deficient accounting verifications that moved went on to um the second phase that is inaccurate um the ones that didn't have any sites in its briefs those were government forms that were submitted that couldn't have been a letterhead even though they were signed by um a cpa and those um um accounting verifications were deemed acceptable as they should have been because the government allowed for certain forms to be executed by cpas so i can't point the court you have to admit it is rare when the government very candidly says well the at least the preliminary judgment by the contracting officer with regard to oklahoma's accounting skills was wrong your honor i can't say as being wrong they're in the same kit and caboodle as free alliance i can't speak for everybody that stands at this podium but i i have been with my office since 1999 and i've always conceded where we need to concede it's not something that i mean i'm proud of the government that they do but you have to appreciate it creates a little problem for your appeal i the law doesn't require a procurement to be perfect and there are instances where we have errors that are so minor um and the retained the ability to waive minor errors and irregularities and where do we know that i mean that's not in codberg's opinion no it's cited in the it's cited in our brief it's in the it's in the rfp it's in the where's that argument taking you your argument is taking you that there are certain disparate treatments that are okay no no not disparate treatment just minor irregularities when we when we nobody nobody no offer or in this procurement was allowed to submit any additional documents after the deadline to submit proposals nobody submitted no offer submitted a revised proposal or additional forms in fact the agency denied those requests specifically denied those requests and declared a mishmash when people filed their application filed their proposals i got a lot of people dealt with the accounting requirement differently well there were different forms that were submitted no two i mean they weren't required to submit the same exact form some submitted federal forms some submitted forms uh signed by a cpa so no two submissions were identical however i can point to the court to page um 21 of the appendix that is uh the the opinion below there was one offer or that submitted the same exact form that free alliance submitted apparently that form had been circulating as a result of previous procurements and it contained more substance than free alliance's forms contained and they were rejected so the district treatment argument doesn't work in this case because an identical form submitted by another offerer was rejected on the same basis well there aren't any it's very hard to have identity because nobody's not all people are submitting the same information well but the form i mean the problem with the form wasn't just the substance of the information it wasn't on letterhead and it was and it didn't contain any substance for both the cta partners there was nothing that the government could have with those forms other than reject the proposal and there was no mechanism in place for the resubmission of proposals or the resubmission of forms i mean basically free alliance is coming to this court and asking for a second bite at the apple and there is no way to cure the deficiencies they're asking they're asking not to be treated differently from the oklahoma bidder but again your honor i point to the court to the fact that the but i mean all you did in your brief was cite page 87 you didn't make an argument as to why there's something in 87 that tells me that there wasn't disparate treatment here no we didn't address disparate i mean we didn't address i mean you raised your brief raises this red flag that is bigger than this whole courtroom on the disparate issue because you say that the folks flunked the accounting test there were many that flunked the accounting test that didn't pass and yet it's not i mean that there are many that were many flunked the accounting test flunked something else too so they didn't go forward yes your honor and there are also other offerers that were given a go in the pre-decisional documents that didn't pass another you know phase uh factor number two and yet when we look at the final findings they are not you know that there's no people who won the contract what are the final findings the final findings are the write-ups that begin at page um the substantive write-ups begin at page 68 of the evaluation of the appendix fda they begin at page 68 68 so 68 is not no no no they these are the write-ups that were these are excerpts from the we couldn't put like all 75 right up what is 68 that's a write-up about a particular bidder right those are the write-ups that were in the final consensus evaluation by the agency at phase one at phase one and the pre-decisional notes are in the charts what i'm trying to explain to the court is that the pre-decisional notes didn't necessarily make it to a final stage if they were found um non-compliant on factor two the pre-decisional notes from factor one so there was going to be a second review before it made it to the pre-decision that the final evaluation sorry i have to read this you got me very confused because your briefing doesn't discuss this at all it's a very messy record your honor no it's not that messy the record is not messy once the government says that oklahoma and and free alliance were treated differently there is no prejudice as a result no no the prejudice is prejudice entirely different issue prejudice is a separate issue that you address once there has been harm correct harm is from being treated differently but before you can show that you have been treated differently you have to at least make a finding or demonstrate that you had a responsive proposal to begin with no no no but where is that in order i mean free alliance claims that it was treated disparately than my that then our friends free alliance are saying i would have gone to phase two but for the fact that i flunked accounting we don't know that they would have gone to well there's no record that shows they wouldn't correct right but there's no record that i understand it's it's all hypothetical in that respect yes as the law requires us to greet free alliance's argument in the context that is presented to us i understand and you appreciate that i appreciate the concern alliance is saying we're supposed to be under the rules we're supposed to be treated the same as oklahoma now we were told that we flunked accounting and therefore we couldn't go forward oklahoma was told you flunked accounting but you couldn't go forward unless you have some other problem and you have some other problems so you can't go forward there are no fine no final evaluation findings on oklahoma in the record we we know from oklahoma that although the record we have showed that they passed accounting right we made that concession after a careful review and i and i and i applaud you for it but to me it was raising a major red flag i you've heard there i appreciate the dilemma your honor but we do but our position is that given the fact that none of the non-compliant uh offers when it comes to accounting verifications move forward um but at the end of the day there was no disparate treatment they were treated the same in the sense that none of them were allowed to go forward and none were awarded thank you very much thank you okay thank you miss sanchez mr schoonover thank you your honor my my friend is right that that in one sense that the law does not require a procurement to be perfect but the law does require a procurement to be fair and i think as this court is is articulating this uh procurement certainly was anything but as it relates to free alliance when we look at page 87 of the appendix as cited by the government there is no information in that page that articulates the government had any concerns whatsoever with the accounting verification forms uh submitted by our friends from oklahoma and though the government says these were pre-decisional documents uh judge clevenger i believe you're correct that this is the record that we have before us and that record shows that this evaluation was certainly they had a different non-compliance issue so your position is even though there were hundreds of bidders that the ground of non-compliance and offer an opportunity for remedy well your honor with regards to the first point so that i kind of believe that that was a two-phase question with regards to the first point about does the government have to state every grounds for non-compliance if we look in the record that was really i think what what the court of federal claims uh was focusing on well and if the court were to look at the record at pages uh appendix page 66 and 67 uh the government has has said below and articulated again here that just because an offer was found to be no-go under one criterion does not necessarily mean that the record would reflect that it was found to be no-go under the other but if we look at pages appendix 66 and 67 we see that there are six offerors that are no-go under both criteria so that certainly tells us that that contrary to perhaps what the court found below that the government's notes in this case were cumulative that is if the government noted non-compliance under criterion one it noted that in the in its in its evaluation notes similarly if it no also noted that there were non-compliance under criterion two it noted that is another reason to find offerors to be no-go uh so so the argument that that perhaps this this doesn't matter that it wasn't really equal because you know the government had found them to be uh non-compliant under a different criterion i don't think is actually borne out by the how the record suggests that the evaluation actually uh took place um and the government noted also that that none of the offerors with deficient accounting verification forms survived to the phase two evaluation and with respect i believe that that's incorrect uh we we we have pointed out in our briefing where some of these other deficiencies took place but if the court were to look at page appendix 61 again this this is a an accounting verification form that was submitted by a company that is not on letterhead and yet this company uh was ultimately named an awardee as the government's most recent filing shows uh so they obviously proceeded to phase two even though they had a non-compliant version of their accounting verification form similarly with appendix page 55 sorry what's wrong with 61 61 is i don't believe that's letterhead your honor and and and that letterhead if it is letterhead provides no more information than what our account or what free alliance's accounting verification forms also certified public account certainly and and so was uh free alliances forms um those those forms indicated on page free alliances forms at appendix pages 41 and 42 indicated the cpa in section 3 who had actually audited their their records and attested to their accuracy uh similarly pages excuse me uh 58 appendix page 58 this is an accounting verification form for another awardee and though this one this accounting verification form is on letterhead the substance of this accounting reform doesn't have a letterhead that's correct but the substance of this accounting verification form is deficient in that uh this cpa by the way it's not actually signed by a cpa it's instead signed by the cpa firm where the solicitation required it to be signed by an actual cpa but this independent accountant's report just says if if the court were to read it uh that that the cpa has reviewed this company's management's assertion that they have an accounting verification uh an adequate accounting system and i apologize if i may finish this thought and does not have any reason to dispute that management's assertion of the adequacy of their accounting verification form okay we we have the arguments thank you thank you your honor the case is taken under submission